# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00444-SBP

W.D.,[1]

      Plaintiff,

v.

LELAND DUDEK,[2] Commissioner of Social Security,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

Plaintiff W.D. brings this action under Title II, 42 U.S.C. §§ 401 *et seq.*, of the Social Security Act (the "Act") for review of the Commissioner of Social Security's (the "Commissioner") final administrative decision denying his claim for supplemental security income ("SSI"). The court has carefully considered the administrative record, ECF No. 12 ("AR")[3], Plaintiff's brief, ECF No. 13 ("Brief"), the Commissioner's response, ECF No. 14 ("Response"), Plaintiff's reply, ECF No. 15 ("Reply"), and the applicable law. No hearing is

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Leland Dudek is now the acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

[3] The court uses "ECF No. ---" to refer to specific docket entries in CM/ECF and uses "AR: ---" to refer to documents in the administrative record.

necessary.

Because the Administrative Law Judge ("ALJ") applied the correct legal standards and substantial evidence supports her findings and the Commissioner's final decision, the court **AFFIRMS**.

## BACKGROUND

Plaintiff applied for SSI benefits on December 3, 2020, alleging a disability onset date of December 1, 2017. AR: 116. His application was denied initially and again on reconsideration. AR: 116. He then requested a hearing before an ALJ, which was held telephonically on April 24, 2023. AR: 116. The ALJ issued a decision concluding that Plaintiff was not disabled, AR: 116-29, and the appeals council denied Plaintiff's request for review, AR: 17, leaving the ALJ's decision as the Commissioner's final decision.

## SSI FRAMEWORK

A person is disabled within the meaning of the Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2)). "However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Brandon v. Colvin*, 129 F. Supp. 3d 1231, 1232 (D. Colo. 2015) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple

determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis in original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Commissioner is required to follow a "five-step sequential evaluation process" which guides the determination of whether an adult claimant meets the definition of disabled under the Social Security Act. 20 C.F.R. § 416.920(a)(1)-(4) (SSI evaluation of disability of adults). If it can be determined that the claimant is disabled or not at a step, the Commissioner makes the determination and does not continue to the next step. § 416.920(a)(4). However, if that determination cannot be made, the Commissioner proceeds to the next step. *Id.*

Step one asks whether the claimant is presently engaged in "substantial gainful activity." § 416.920(a)(4)(i). If so, the claimant is "not disabled regardless of [ ] medical condition, . . . age, education, and work experience." § 416.920(b).

Step two assesses whether the claimant has a medically severe impairment or combination of impairments under § 416.909. § 416.920(a)(4)(ii). If the claimant does not show "any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities," the claimant is "not disabled" regardless of "age, education, and work experience." § 416.920(c).

Step three tests whether the claimant's "impairment(s) meets or equals" a listed impairment and "meets the duration requirement[.]" § 416.920(a)(4)(iii). If so, the claimant is disabled regardless of "age, education, and work experience." § 416.920(d). If not, the

Commissioner analyzes the claimant's residual functional capacity, or "RFC," which "is the most [the claimant] can still do despite [their] limitations." §§ 416.902(e), 416.945(a)(1).

Step four considers whether the claimant "can still do [their] past relevant work" based on their RFC. §§ 416.920(a)(4)(iv); 416.920(e). To be disabled, the claimant's "impairment(s) must prevent [them] from doing [their] past relevant work." § 416.920(f). For guidance on this determination, "ALJs often seek the views of 'vocational experts.'" *See Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (citing §§ 404.1566(e), 416.966(e)). If the claimant's severe impairment prevents them from doing their "past relevant work" or they have no "past relevant work," the analysis continues to the final step. § 416.920(g)(1).

Lastly, step five considers the RFC assessment and the claimant's vocational factors— "age, education, and work experience." §§ 416.920(a)(4)(v), 416.920(g)(1). Any other work the claimant "can adjust to must exist in significant numbers in the national economy (either in the region where [they] live or in several regions in the country)." § 416.960(c)(1). The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." § 416.960(c)(1). If the claimant "can make an adjustment to other work," they are "not disabled." § 416.920(g)(1).

The claimant has the burden of proof at steps one through four. The Commissioner bears the burden at step five to prove there is other work the claimant can perform. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The burden-shifting at step five, however, does not shift the plaintiff's burden to prove his RFC. § 416.960(c)(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the same

residual functional capacity assessment that we used to determine if you can do your past relevant work.").

## ALJ'S DECISION

At step two, the ALJ found that Plaintiff had severe impairments of lumbar spine degenerative disc disease status post L4-5 fusion; cervical spine degenerative disc disease with radiculopathy status post foraminotomy; persistent depressive disorder with anxious distress; and post-traumatic stress disorder (PTSD). AR: 119. At step three, the ALJ concluded that these impairments, alone and in the aggregate, did not medically equal a listing. AR: 120-22. The ALJ then calculated Plaintiff's RFC, finding that he could perform light work as defined in § 416.967(b), with additional limitations not relevant to this appeal. AR: 122. The ALJ concluded as step four that Plaintiff was unable to perform any past relevant work but then determined as step five that Plaintiff could find work in jobs that exist in significant numbers in the national economy. AR: 128-29.

## STANDARD OF REVIEW

In reviewing the Commissioner's decision, the court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek*, 587 U.S. at 102 (quoting *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains
> sufficient evidence to support the agency's factual determinations. And whatever

> the meaning of "substantial" in other contacts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 102-103 (cleaned up); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (the court may not displace the Commissioner's choice between two fairly conflicting views, even if the court would have made a different choice if the matter had been before it de novo). Even so, this court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). "A reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 593 U.S. 357, 369 (2021) (cleaned up).

In addition, this court's review is guided by the harmless error doctrine, which the Tenth Circuit Court of Appeals applies to social security disability cases. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security

context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

Plaintiff claims that the ALJ erred by failing to evaluate a letter from Dr. Stacie Daniels, AR: 1204 ("Letter"), as a medical opinion. Brief at 6. He also asserts that the ALJ should have incorporated Plaintiff's need for an emotional support animal ("ESA") when calculating Plaintiff's RFC but did not do so. *Id.* The court will take each argument in turn.

## I.    Dr. Daniels's Letter

An ALJ must "give consideration to all the medical opinions in the record," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012), and articulate how persuasive she finds each medical source's opinion. § 416.920c. At a minimum, an ALJ must address the supportability and consistency of a medical opinion.[4] *See* § 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical

---

[4] The supportability factor considers whether the medical source's opinion is supported by "objective medical evidence" and "supporting explanations;" "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be." § 416.920c(c)(1) (cleaned up). The consistency factor compares the medical source's opinion and "the evidence from other medical sources and nonmedical sources" in the record. § 416.920c(c)(2). "The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be." *Id.* (cleaned up).

opinions or prior administrative medical findings in your determination or decision.").[5]

At issue here is the Letter written by Dr. Daniels, the exact date of which is unclear, where she stated:

> **Validity: 10-10-2022 - 10-10-2023**
>
> To Whom It May Concern
>
> ███████ is a current patient of mine who has been prescribed a medical therapy / emotional support animal as part of their ongoing medical treatment program. The patient suffers from a debilitating psychiatric illness that is currently being treated in-part with a prescribed medical therapy / emotional support animal (ESA), consistent with state law and the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) criteria. The medical therapy / emotional support animal is medically necessary for treatment of their ongoing psychiatric diagnoses
>
> When traveling, the patient may need their medical therapy / emotional support animal to accompany them during air travel, land travel, and/or during various activities at their destination. Therefore, in accordance with the Air Carrier Access Act (49 U.S.C. 41705 and 14 C.F.R. 382), the patient's medical therapy / emotional support animal is required to accompany them in the cabin of the aircraft and/or land vehicle for the reason(s) stated herein.
>
> Furthermore, due to the patient's psychiatric diagnosis, they are advised to have their medical therapy / emotional support animal remain with them in their residence during this ongoing medical treatment program, in accordance with the Fair Housing Amendment Act of 1988. The animal's presence will help mitigate the debilitating medical symptoms they suffer from. The patient assumes full responsibility for the training, safety, cleanliness, health, and conduct of the animal at all times.
>
> Animal Therapy has been cited as an appropriate treatment for their conditions in the following medical literature: J Clin Psychol. 2017 Jul; 73(7): 761-784. doi: 10.1002/jclp.22410. Epub 2016 Nov 3., US National Library of Medicine National Institutes of Health

The ALJ acknowledged the Letter in her decision, writing:

> As for the [Letter] from Stacie Daniels, MD, that an emotional support animal is medically necessary for treatment of the claimant's ongoing psychiatric diagnoses, the undersigned is neither persuaded nor unpersuaded given its lack of context as it relates to a Social Security Administration disability determination (Ex. 20F).

AR: 127. Plaintiff maintains that the ALJ failed to treat the Letter as a medical opinion and articulate the supportability and consistency of the opinions contained within it.

A "medical opinion" is a statement from a medical source about what a claimant can still

---

[5] The ALJ "may, but [is] not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." § 416.1520c(b)(2).

do despite his impairments and whether the claimant has one or more impairment-related limitations or restrictions in his ability to: (1) perform physical demands of work activities; (2) perform mental demands of work activities; (3) perform other demands of work, such as seeing, hearing, or using other senses; and (4) adapt to environmental conditions. § 416.913(a)(2); *see also Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023). There is no dispute that, as a medical doctor, Dr. Daniels qualifies as a medical source. Rather, the issue before the court is whether Dr. Daniels opined as to Plaintiff's abilities in the areas described in § 416.913(a)(2) despite his impairments.

The court finds that the Letter's vague and wholly unparticularized statements do not address Plaintiff's abilities despite his impairments, and thus the Letter is not a medical opinion. For example, Dr. Daniels does not identify Plaintiff's "debilitating psychiatric illness" that she cites as the basis for the Letter, nor does she reference a particular prescription[6] for an ESA or explain why an ESA is "medically necessary for [Plaintiff's] treatment." Although Dr. Daniels suggests that an ESA may "help[] mitigate the debilitating medical symptoms [Plaintiff] suffers from" when Plaintiff is traveling or at home, she never explains how an ESA would do so, the symptoms an ESA would address, or what Plaintiff is capable of doing despite his impairments and supposed need for an ESA.

In *Angela H. v. Commissioner of Social Security*, a case with remarkably similar facts to those here, the court confronted whether a nurse's letter describing a claimant's need for an ESA was a medical opinion. No. 2:22-cv-4461, 2024 WL 1259875, at *4 (S.D. Ohio Jan. 30, 2024), *recommendation adopted*, 2024 WL 1257213 (S.D. Ohio Mar. 25, 2024). Similar to the Letter

---

[6] As the court will touch on below, Plaintiff also has not pointed to a prescription for an ESA.

here, the nurse in that case wrote:

> My client meets the definition of disability under the Fair Housing Act and the Rehabilitation Act of 1973. Due to this emotional disability, my client has certain limitations related to social interaction, coping with stress and anxiety. In order to help alleviate these difficulties, and to fully use and enjoy the dwelling unit you own and/or administer, I have recommended my client to obtain a pet or emotional support animal. The presence of this animal is necessary for the emotional and mental health of my client, because its presence will mitigate the symptoms my client is currently experiencing.

*Id.* (footnote omitted). In concluding that the nurse did not offer a medical opinion, the court pointed out that the nurse did not explain "how an emotional support animal would help [claimant] perform the mental demands of work activities," highlighting too that the letter "makes no mention of work at all." *Id.* Ultimately, though, the court rested its conclusion that the letter was not a medical opinion on the fact that nowhere did the nurse "describe what [claimant] is able to do despite her mental-impairment limitations or restrictions." *Id.*

Similarly, the Tenth Circuit has found general statements that do not address a claimant's ability to perform the specific demands of work activities are not medical opinions. In *Staheli*, the doctor stated, "[claimant's] prognosis for completing on-the-job training and maintaining full-time, gainful employment is fair to good as long as the job tasks are within her ability level, she receives adequate supervision/training/accommodations, and she is provided sufficient time to perform her tasks." 84 F.4th at 906 (quotation omitted). The doctor also recommended that the claimant "receive extensive supervision and support while at work. This support can include tutoring, extended time to complete tasks, and any other support/accommodations available at the work site." *Id.* (quotation omitted).

The Tenth Circuit found neither set of statements qualified as medical opinions.

Regarding those concerning the claimant's prognosis, the Tenth Circuit found that "[t]hese broad statements did not meet the regulatory criteria for a medical opinion" because they "did not provide evidence concerning [claimant's] ability to perform the specific demands of work activities[,]" but instead merely "described in broadly applicable terms what she would likely need to hold down a job." *Id.* at 907 (citing § 404.1513(a)(2)). Likewise, the court rejected the notion that the doctor's recommendations were a medical opinion because those statements were "too general" and did not address "what [claimant] could still do despite her impairments." *Id.*

Guided by the reasoning in *Angela H.* and *Staheli*, the court finds that Dr. Daniels's broad, nonspecific statements in the Letter are not medical opinions because they do not address Plaintiff's abilities to perform the functions described in § 416.913(a)(2)(i). Accordingly, the court finds no error in the ALJ's treatment of Dr. Daniels's statements.[7]

## II.   RFC

Plaintiff also insists that the ALJ was required to address his need for an ESA when evaluating his RFC. Assuming without deciding that it is proper for an ALJ to consider the

---

[7] Additionally, because the Letter is simply "other medical evidence," *see* § 416.913(a)(3), and there is no requirement that an ALJ articulate how she considered such evidence, *see M.H. v. Kijakazi*, No. 21-cv-01797-CNS, 2023 WL 2401063, at *5 (D. Colo. Mar. 8, 2023), the court finds the ALJ's acknowledgment and discussion of the Letter is sufficient for the court to conclude that the ALJ adequately considered the Letter and Dr. Daniels's statements. *Cf. T.E. v. Comm'r, Soc. Sec. Admin.*, No. 21-cv-02274-CNS, 2023 WL 2661615, at *3 (D. Colo. Mar. 28, 2023) ("And even though Dr. Barry's report constitutes 'other medical evidence,' the ALJ erred in failing to *consider or at least note the existence of* Dr. Barry's remaining opinions contained in the report when making his RFC assessment[.]") (emphasis added).

potential need for an ESA,[8] the court respectfully disagrees.

The Act, agency regulations, as well as the caselaw in the Tenth Circuit and this District do not make clear when an ALJ must address a claimant's need for an ESA for purposes of calculating a claimant's RFC. *See McGehee v. Berryhill*, 386 F. Supp. 3d 80, 87 (D. Mass. 2019) (noting same for the First Circuit); *see also Angela H.*, 2024 WL 1259875, at *7 ("Plaintiff does not cite to any authority establishing a standard for incorporating a claimant's need for an emotional support animal into an RFC assessment."). In the cases that have addressed the issue, courts have remanded when an ALJ fails to discuss a claimant's need for an ESA and there is evidence that an ESA is "medically necessary." *See McGehee*, 386 F. Supp. 3d at 87 (citing *Santos v. Colvin*, No. 3:12-cv-05827-KLS, 2013 WL 5176846, at *6 (W.D. Wash. Sept. 12, 2013); and *Payano v. Colvin*, No. 2:15-cv-00294-RFB-GWF, 2017 WL 4778593, at *4 (D. Nev. Oct. 23, 2017)); *Angela H.*, 2024 WL 1259875, at *7 (citing *Ashley D. v. Comm'r of Soc. Sec.*, No. CV 22-11344, 2023 WL 5266849, at *10 (E.D. Mich. July 17, 2023), *recommendation adopted*, 2023 WL 5251849 (E.D. Mich. Aug. 15, 2023); and *Horne v. Saul*, No. 2:19-cv-013-DCP, 2020 WL 1547068, at *12 (E.D. Tenn. Mar. 31, 2020)); *Duenes v. Kijakazi*, 578 F. Supp. 3d 859, 869-70 (S.D. Tex. 2022) (collecting cases).

Assuming that this is the proper standard,[9] Plaintiff bore the burden of establishing the

---

[8] Several courts have entertained the notion that if a service animal or ESA is considered an accommodation, then an ALJ is not permitted to consider any limitations posed by the need for a service animal or ESA. *See Gonzalez v. Colvin*, No. 15-cv-02020-CBS, 2016 WL 8670502, at *6 (D. Colo. Oct. 14, 2016); *Shue v. O'Malley*, No. 23-1795, 2024 WL 2827936, at *4 (4th Cir. June 4, 2024); *see also* SSR 11-2P, 2011 WL 4055665 (S.S.A. Sept. 12, 2011).

[9] Plaintiff and the Commissioner appear to agree that this is the correct standard. *Compare* Brief at 13-16; Reply at 2-7, *with* Response at 10-11.

medical necessity of an ESA. *See Ashley D.*, 2023 WL 5266849, at *10 ("[I]t is *Plaintiff* who bears the burden of proving the existence and severity of limitations caused by her impairments and that [she] has a more restrictive RFC than that assessed by the ALJ.") (emphasis in original, citation and internal quotation marks omitted). Plaintiff claims that the record contains sufficient evidence to show that an ESA was medically necessary. Nowhere, though, does Plaintiff direct the court to an actual prescription for an ESA during the relevant period. *See McGehee*, 386 F. Supp. 3d at 87-88 ("A claimant's use of a service dog must be considered by the ALJ when there is evidence of a prescription from a medical provider for the dog.") (citations omitted).

Instead, Plaintiff first points to the Letter. To the extent that there is a split on the issue of whether a letter recommending an ESA is sufficient, *see Tiffany B. v. Kijakazi*, No. 1:20-cv-02696-DLP-JMS, 2022 WL 224817, at *6 (S.D. Ind. Jan. 26, 2022) (noting that "[a]bsent a prescription, courts are split on whether a letter recommending a service dog from a medical source is sufficient to show that the dog is medically necessary" and collecting cases), the court is persuaded by the line of cases holding that a doctor's letter that does not specifically address how an ESA will assist a claimant in the workplace cannot establish medical necessity.[10] *See Ashley D.*, 2023 WL 5266849, at *10 (holding that a doctor's "vague statement that he 'feel[s]' Plaintiff 'would benefit' from an emotional support animal and that one 'could help with her symptoms' was not evidence of medical necessity); *Angela H.*, 2024 WL 1259875, at *7 (nurse's statements did not provide evidence of medical necessity because they "d[id] not explain the

---

[10] The Commissioner also emphasizes that the Letter is only valid for from October 2022 through October 2023, which is several months after the period relevant to Plaintiff's SSI claim.

impact that an emotional support animal would have on Plaintiff's ability to work").[11]

Plaintiff also directs the court to treatment notes that he claims show the benefits of having an ESA. *See* Brief at 12-13 (citations omitted). While these records demonstrate, at most, that having a dog provides some support or benefit to Plaintiff—as is true with many animals, whether they be service animals or general household pets—none establish the *necessity* of an ESA. Because the standard for when an ALJ must consider the need for an ESA is not clear, the court borrows from caselaw concerning when an ALJ must address the need for a walker or assistive device. Similar to the standard set forth above, an ALJ must address a claimant's need for an assistive device when there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009) (citing SSR 96-9p, 1996 WL 374185, at *7).

As the court in *Staples* explained, "SSR 96-9p requires more than generalized evidence of

---

[11] *Accord Horne*, 2020 WL 1547068, at *12 (Plaintiff did not establish medical necessity for service animal, in part, because "[t]he referenced letter to Plaintiff's apartment complex that he requires a service animal does not detail that such an animal was medically prescribed or provide an opinion on the impact of a service animal on Plaintiff's ability to work."); *Christian J. v. Comm'r of Soc. Sec.*, No. 6:18-cv-1004 (ATB), 2019 WL 6840130, at *9 (N.D.N.Y. Dec. 16, 2019) ("While Dr. Higham opined that a 'service dog would provide a benefit for maintaining psychological well-being' there is no medical opinion of record that plaintiff required the assistance of a service animal in order to engage in substantial gainful employment.") (citation omitted); *Fagan v. Kijakazi*, No. 1:20-cv-706, 2021 WL 5566481, at *6 (M.D.N.C. Nov. 29, 2021) ("Dr. Dimkpa's statement that Plaintiff 'can keep his service dog . . . with him everywhere he goes' . . . does not indicate that Plaintiff's mental symptoms render a service dog medically necessary[.]").

a condition that might require use of a cane. It requires medical documentation *establishing the need* for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." 329 F. App'x at 192 (cleaned up, emphasis in original); *see also Bryan v. Colvin*, No. 15-cv-00031-CBS, 2016 WL 8715612, at *6 (D. Colo. Mar. 4, 2016) ("The Social Security regulations require more than generalized evidence of a condition that might require use of a cane.") (citing *Staples*, 329 F. App'x at 192). Adopting that same rule here, Plaintiff cannot prevail simply by pointing to medical records suggesting that he experiences some benefit from having an ESA.

Absent evidence that an ESA was medically necessary, the court cannot say that the ALJ erred when she did not factor Plaintiff's ESA into her RFC calculation. Even if she did, the court would also find that any error was harmless. *Benjamin C. v. Comm'r of Soc. Sec.*, No. 5:21-cv-872 (ATB), 2022 WL 16571699, at *11 (N.D.N.Y. Nov. 1, 2022) (holding that any failure to address need for service dog was harmless error where there was "no medical opinion in the record suggested that the animal's presence was necessary for plaintiff to function in the workplace" and "there is no evidence in the record that the dog was ever made part of a formal treatment plan"); *see also id.* ("In finding harmless error in this case, this court is following the majority of the district courts to consider this issue[,]" and collecting cases).

## CONCLUSION

For the foregoing reasons, the court respectfully finds that the Commissioner's final decision is supported by substantial evidence in the administrative record and applies the correct legal standards. Accordingly, the court finds no grounds warranting reversal or remand and therefore **AFFIRMS** the ALJ's determination that Plaintiff is not disabled. The Clerk of Court

shall enter judgment in the Commissioner's favor and close this civil action.

DATED: March 28, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge